FILED
DEC 07 2022
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| SAMANTHA LACOE,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SISSETON, JAMES CROYMANS, INDIVIDUALLY AND CHIEF OF POLICE; BRITTANY APPEL, CITY POLICE COMMISSION, INDIVIDUALLY AND ALDERWOMAN; LEE SOLBERG, CITY POLICE COMMISSION, INDIVIDUALLY AND ALDERMAN; DELRAY GERMAN, CITY POLICE COMMISSION, INDIVIDUALLY AND ALDERMAN; DYLAN KIRCHMEIER, INDIVIDUALLY AND IN HIS ROLE AS ROBERTS COUNTY STATE'S ATTORNEY; TERRY JASPERS, INDIVIDUALLY AND IN HIS CAPACITY AS MAYOR; TREVOR MISHLER, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; AND JEREME STAUSS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;<br><br>Defendants. | 1:22-CV-01010-CBK<br><br>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

Plaintiff Samantha LaCoe brings this civil rights action under 42 U.S.C. § 1983 along with several purported state law claims seeking monetary and injunctive relief against defendants James Croymans, Brittany Appel, Lee Solberg, Delray German, Dylan Kirchmeier, Terry Jaspers, Trevor Mishler, Jereme Stauss, and the City of Sisseton for the violation of her constitutional rights arising from her term of employment with the Sisseton Police Department. This matter is before the Court on defendant's motion to

dismiss for lack of subject matter jurisdiction and for failure to state a claim. The motion should be granted.

## I. Background

Samantha LaCoe entered into an agreement with the Sisseton Police Department on January 18, 2021, to work as a law enforcement officer. Approximately a year later, LaCoe resigned on Chief James Croymans' request after being placed on a Brady/Giglio impeachment disclosure list.[1] LaCoe alleges that State's Attorney Dylan Kirchmeier placed her on the list, absent any rule or regulation, and that she signed a letter consenting to the Brady/Giglio listing under duress. Kirchmeier put LaCoe onto the list after four total incidents. In August and December of 2021, Kirchmeier did not agree with LaCoe's stated reason for two different traffic stops. In January 2022, Kirchmeier found that LaCoe made a misstatement in one of her reports and a clerical error naming the wrong defendant. LaCoe contends that none of her conduct warranted placement on the Brady/Giglio list, and that she was not given a meaningful opportunity to rebut or defend herself before being placed on the list. She retracted her resignation and consent to the Brady/Giglio listing in an undated affidavit attached to her complaint.

LaCoe further alleges that she was subject to a variety of discriminatory conduct, including failure to train and harassment, because she is a woman. She contends that during her first week on the job, she was given a duty vest that was too large for her body and was given a service weapon too large for her hands. LaCoe claims that between January and April, her Field Training Officer, Sergeant Jereme Stauss, was constantly complaining about his personal life rather than providing training for LaCoe to be successful at her job. Stauss allegedly failed to provide training on how to write reports as well as guidance about the Department's policies and procedures. In late April, LaCoe

---

[1] Pursuant to the constitutional duty to provide criminal defendants with exculpatory evidence under Brady v. Maryland, 383 U.S. 80 (1963), and impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972), a Brady/Giglio list, or Impeachment Disclosure List, contains the names of officers known to a jurisdiction who have been dishonest in the past.

contends that she was "labeled a 'snitch'" for reporting Officer Jon Sheehan to Croymans after she learned while helping as a cheer coach at the local high school that Sheehan was inappropriately contacting the girls through social media. She alleges that during a July 2021 law enforcement appreciation event, none of the other officers would speak to her. After the event, LaCoe claims that Croymans brought her into his office and said that LaCoe was "weak and [alienates herself] from people," that "no one wants to speak with [her] or work with [her] and people see through [her]," and that she should think "long and hard if this career is for [her]." In October 2021, Croymans told LaCoe that he did not believe she would pass the Emergency Vehicle Operations Course and firearms training, and she allegedly never received any additional training from Strauss after Croymans told her to seek assistance. LaCoe contends that Croymans received her complaints of sex discrimination, including Corporal Trevor Mishler's remark that if LaCoe "sucked d—— like she sucked the fun out of the room she would be further ahead," which Croymans dismissed as a misunderstanding.

On January 17, 2022, Croymans called LaCoe into his office to notify her that Kirchmeier determined that statements in one of her reports did not match her body camera footage. Croymans informed LaCoe that she was being placed on the Brady/Giglio list and put on a year of probation, but that the disclosure would stay within Roberts County. Two days later on January 19, Croymans told LaCoe that the Police Commission had lost confidence in her during an emergency meeting and that she had to resign. LaCoe alleges that all the defendants acted together to arbitrarily place her on the Brady/Giglio list and to deny her adequate training so that she would resign from her job. Because of the defendants' actions, LaCoe claims that she has suffered harm to her career as a law enforcement officer, lost job opportunities, and suffered severe depression, anxiety, and economic harm.

## II. Standard of Review

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party.

Jacobson Warehouse Co. v. Schnuck Mkts., Inc., 13 F.4th 659, 668 (8th Cir. 2021); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The complaint must contain "enough facts to state a claim to relief that is plausible on its face" to survive the motion to dismiss. C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347, 591 F.3d 624, 630 (8th Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The factual allegations "must be enough to raise a right to relief above the speculative level." In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1063 (8th Cir. 2017) (quoting Twombly, 550 U.S. at 555). In addition, the factual contents of the complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Pietoso, Inc. v. Rep. Servs., Inc., 4 F.4th 620, 622 (8th Cir. 2021) (quoting Glick v. W. Power Sports, Inc., 944 F.3d 714, 717 (8th Cir. 2019)).

Nevertheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). When assessing the merits of a complaint challenged under Federal Rule of Civil Procedure 12(b)(6), a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." McDonough v. Anoka Cnty., 799 F.3d 931, 945–46 (8th Cir. 2015) (citing Iqbal, 556 U.S. at 679).

"A court generally may not consider materials outside the pleadings when deciding a motion to dismiss for failure to state a claim." Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, courts may "consider 'some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.'" Id. (quoting Porous Media Corp., 186 F.3d at 1079).

## III. Discussion

LaCoe asserts various claims against the defendants. She first claims that the Department violated both her procedural and substantive due process rights under the Fourteenth Amendment of the United States Constitution as well as under the South Dakota State Constitution. LaCoe claims further that she was constructively discharged

based on the Department's pattern of harassment and failure to train. She alleges that all the defendants together acted to conspire to violate her Fourteenth Amendment rights to due process by placing her on the Brady/Giglio list, as well as providing her with inadequate training so that she would resign from her job. She additionally claims that by placing her on the Brady/Giglio list, the defendants intentionally and negligently inflicted emotional distress upon her. All of LaCoe's federal claims should be dismissed for failure to state a claim or because the particular named defendant is immune from suit, and all of her state law claims should be dismissed because the Court chooses not to exercise supplemental jurisdiction when no federal claims remain.

**A. Fourteenth Amendment Due Process Claims**

LaCoe argues, in essence, that the defendants violated her procedural and substantive due process rights by placing her on the Brady/Giglio list without giving her an opportunity to defend herself and forcing her to resign from her job with the Department. For the protections of procedural due process to attach, a plaintiff must first "have a constitutionally protected interest in life, liberty, or property." Mickelson v. Cnty. of Ramsey, 823 F.3d 918, 930 (8th Cir. 2016). Here, LaCoe claims that she had a property interest in her employment and a liberty interest in her reputation and good name.

**1. Property Interest**

To establish a property interest in a job, a plaintiff must show that she "had a reasonable and legitimate expectation of continued employment." Mogard v. City of Milbank, 932 F.3d 1184, 1190 (8th Cir. 2019) (quoting Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 803 (8th Cir. 2004)). "State law and the terms of employment determine whether the plaintiff's interest in his or her job rises to the level of a constitutionally protected property right." Id. (citing Howard, 363 F.3d at 803). "A plaintiff's subjective and unilateral expectation that she had a legitimate claim of entitlement to continued employment in the same position is insufficient to create a property interest." Id. (cleaned up).

LaCoe fails to establish a property interest sufficient to support a procedural due process claim. She relies on her contract with the Department to demonstrate that she has a property interest in her employment as a law enforcement officer, but the contract that she produced does not bind the city to employ her for any period of time. Instead, the contract provides that LaCoe must remain in the Department for a minimum of three years or reimburse the city for certain expenses incurred to hire her. Indeed, the contract specifically states, "Nothing contained herein shall be construed as a promise or agreement by either the Sisseton Police Department or the CITY to retain Samantha LaCoe as a police officer for the Sisseton Police Department for thirty-six (36) months or any portion thereof." Because the contract does not bind the city to employ LaCoe for a certain period of time, it cannot serve as the basis of a property interest that entitles LaCoe to procedural due process.

LaCoe's apparent belief that she had a three-year contract is insufficient to form a property interest in the face of South Dakota's standard employment law. She states that she "was lead [sic] to believe that her employment term was for three years per contract and [she] was not an 'at-will' employee." But a unilateral belief that she had a contract entitling her to three years of employment with the Department is insufficient to form the basis of a property interest.[2] LaCoe seems to concede that South Dakota is an at-will employment state. See Holland v. FEM Elec. Ass'n, Inc., 637 N.W.2d 717, 720 (S.D. 2001) ("South Dakota is an employment-at-will state."); SDCL 60–4–4. She argues, however, that because her contract specified a term of years, her employment was not at-will. Although the contract does contain a term of years, that term is in reference to the amount of time that LaCoe had to work for the Department to avoid repayment of training costs—not to a period of time that the Department had to employ LaCoe. Further, while an employer can surrender the statutory right to terminate employees at will, LaCoe has not alleged facts sufficient to show that the Department has done so here.

---

[2] Even if the Court considered the text-message exchange between LaCoe and Croymans that she submitted with her response to the defendants' motion to dismiss, it does not establish that the Department was contractually bound to employ LaCoe for three years.

See Harvey v. Regional Health Network, Inc., 906 N.W.2d 382, 397 (S.D. 2018). At-will status can be given up if an employer "explicitly states that discharge will occur for cause only" or an employment agreement "contains a detailed list of exclusive grounds for employee discipline or discharge and, a mandatory and specific procedure which the employer agrees to follow prior to any employee's termination." Id. at 397–98 (quoting Butterfield v. Citibank of S.D., 437 N.W.2d 857, 859 (S.D. 1989)). Here, rather than limiting the Department to for-cause termination only, LaCoe's contract explicitly preserved at-will status. And, as the defendants correctly argue, Sisseton's municipal code of which the Court takes judicial notice, contains a non-exhaustive list of grounds for employee discipline or discharge, not a list of exclusive grounds. See SISSETON, S.D., MUN. CODE § 2.24.650 (2021), https://library.municode.com/sd/sisseton. LaCoe has failed to allege facts sufficient to show that her employment fell outside of the employement at-will status of South Dakota.

Although Sisseton's municipal code preserves due process for its employees, that provision of the Code cannot serve as the basis for a federal procedural due process violation claim. The Code states that certain specified due process procedures will be followed for municipal employees. SISSETON, S.D., MUN. CODE § 2.24.040 (2021). But while the procedural due process property interest inquiry does focus on state law, see e.g., Howard, 363 F.3d at 803, "[t]he simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (quoting Vruno v. Schwarzwalder, 600 F.2d 124, 130–31 (8th Cir. 1979)); see also Olim v. Wakinekona, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."). Here, the Sisseton Municipal Code mandates certain procedures, but does not create an independent underlying substantive right to public employment. Therefore, LaCoe fails to state a claim that she was denied procedural due process based on a protected property interest and this claim should be dismissed.

**2. Liberty Interest**

LaCoe's liberty interest claim hinges on the alleged failure to provide her with a name-clearing hearing after she was placed on the Brady/Giglio list. As an at-will employee, LaCoe has no liberty interest in her continued employment. See Mogard, 932 F.3d at 1190 ("At-will, public employees generally have no liberty interest in continued employment."). But "liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." Winskowski v. City of Stephen, 442 F.3d 1107, 1110 (8th Cir. 2006) (quoting Winegar v. Des Moines Indep. Cmty. Sch. Dist., 20 F.3d 895, 900 (8th Cir. 1994)). Accusations of dishonesty are sufficiently stigmatizing to implicate liberty interests. See Winegar, 20 F.3d at 899 ("The requisite stigma has generally been found when an employer has accused an employee of dishonesty, immorality, criminality, racism, and the like." (quoting Shands v. Kennett, 993 F.2d 1337, 1347 (8th Cir. 1993)). The defendants do not appear to challenge the adequacy of LaCoe's liberty interest in her reputation but argue that she failed to state a claim for a procedural due process violation.

The Eighth Circuit appears to have two different, but very similar, tests that a plaintiff must meet to successfully claim the deprivation of a liberty interest. Under the first test, a plaintiff must show that "(1) [s]he was stigmatized by the statements; (2) those statements were made public by the administrators; and (3) [s]he denied the stigmatizing statements." Mogard, 932 F.3d at 1191 (quoting Rush v. Perryman, 579 F.3d 908, 913 (8th Cir. 2009)); see also Correia v. Jones, 943 F.3d 845, 848 (8th Cir. 2019); Hammer v. City of Osage Beach, 318 F.3d 832, 839–40 (8th Cir. 2003); Speer v. City of Wynne, 276 F.3d 980, 984 (8th Cir. 2002); Coleman v. Reed, 147 F.3d 751, 755 (8th Cir. 1998). Under the second test, a plaintiff "must demonstrate: '(1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public; and (4) an alteration or extinguishment of a right or legal status.'" Crews v. Monarch Fire Prot. Dist., 771 F.3d 1085, 1091–92 (8th Cir. 2014) (quoting Crooks v. Lynch, 557 F.3d

846, 849 (8th Cir. 2009)); see also Brown v. Simmons, 478 F.3d 922 (8th Cir. 2007). Under either test, a plaintiff must avail herself of available procedures before complaining of a procedural due process violation. See Raymond v. Bd. of Regents of the Univ. of Minn., 847 F.3d 585, 599–90 (8th Cir. 2017). "[A]n employee who fails to request post-termination process cannot later sue for having been deprived of it." Id. at 599 (quoting Winskowski, 442 F.3d at 1111).

LaCoe fails to state a claim for the deprivation of a liberty interest in her reputation because she did not allege in her complaint that she requested a name-clearing hearing after her resignation. Although LaCoe alleges in her complaint that she was denied a meaningful opportunity to defend herself from being placed on the list, she did not allege that she ever asked for a hearing to clear her name. LaCoe states in her response to the defendant's motion to dismiss that she requested that the Brady/Giglio listing be purged from her record on June 1, 2022, but that claim is outside of the pleadings and improper for the court to consider at this phase. Even if the Court did consider it, the request is still insufficient to support a claim for the deprivation of a liberty interest. Not only was LaCoe's purported hearing request to the Department made almost six months after she resigned, but the request was also made within a demand letter asking the Department to purge her personnel file in order to avoid further embarrassment or future litigation. While "a discharged employee need not use the term name-clearing hearing," the request must put an employer on notice of what hearing may be required. Floyd-Gimon v. Univ. of Ark. for Med. Scis. ex rel. Bd. of Trs. of Univ. of Ark., 716 F.3d 1141, 1148 (8th Cir. 2013) (quoting Rosenstein v. City of Dallas, 876 F.2d 392, 396 (5th Cir. 1989)). In Floyd-Gimon, the Court held that the plaintiff's general request for a due process hearing was insufficient as a matter of law because it could have applied to the plaintiff's property interest claim in her employment in addition to her liberty interest claim in her reputation. Id. Because the type of process required depends on the type of claim asserted, the general request was insufficient to notify the employer that it had to provide a name-clearing hearing related to a liberty interest. Id. Here, LaCoe did not allege that she requested a hearing at all, nor did she allege that she

notified the Department she was asserting a liberty interest in her reputation. The letter requesting that her personnel file be purged is insufficient to give notice that she was requesting a hearing with respect to her liberty interest claim—a claim she now seeks to raise in addition to her property interest claim—because it lacked the requisite level of specificity. Since LaCoe failed to allege in her complaint that she requested a name-clearing hearing, she has failed to state a claim for the violation of her due process rights.

**3. Predeprivation Process**

LaCoe's threadbare complaint can potentially be construed to argue that she was denied pre-deprivation process for both of her procedural due process claims. "The [pre-termination] due process requirements pronounced in Loudermill apply equally to liberty and property interests." Coleman, 147 F.3d at 755 (citing Schleck v. Ramsey Cnty., 939 F.2d 638, 642–43 (8th Cir. 1991)). Here, even if her complaint can be construed to allege that she was denied a pre-deprivation hearing based on a property interest in her employment, her claim fails because her contract with the Department is insufficient in the face of South Dakota law.

Although LaCoe had a liberty interest in her reputation sufficient to warrant a Loudermill hearing, she fails to state a claim against any of the named defendants because they are either immune from suit or were not personally involved in the Brady/Giglio listing. To start, LaCoe's complaint fails to state a claim for the deprivation of *post*-termination procedures because she failed to request a hearing; alleging a *pre*-termination procedural due process violation does not require exhaustion. See Does 1–2 v. Regents of the Univ. of Minn., 999 F.3d 571, 582 (8th Cir. 2021) ("[I]t is not necessary for a litigant to have exhausted available postdeprivation remedies when the litigant contends that he was entitled to predeprivation process."). Although a pre-termination hearing is required to discharge a public employee, "it 'need not be elaborate.'" Raymond, 847 F.3d at 590 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985)). "The essential requirements of due process . . . are notice and an opportunity to respond." Id. (quoting Loudermill, 470 U.S. at 546). "To satisfy minimal due-process requirements at the pre-termination stage, a public employer must give the

public employee oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. (quoting Smutka v. City of Hutchinson, 451 F.3d 522, 526–27 (8th Cir. 2006)). LaCoe admits in her complaint that she was aware of the various charges against her that Kirchmeier planned to use as the foundation to put her on the Brady/Giglio disclosure list, but she claims that she did not receive an opportunity to explain or defend herself against the allegations.[3]

The Brady/Giglio listing that essentially accuses LaCoe of dishonesty is sufficient to entitle her to predeprivation process based on her liberty interest in her reputation, but as a State's Attorney sued in his individual capacity for damages, Kirchmeier has absolute immunity. It is well established that prosecutors are immune for actions that are "intimately associated with the judicial phase of the criminal process." Van de Kamp v. Goldstein, 555 U.S. 335, 342–43 (2009) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). But absolute immunity may not apply to a prosecutor engaged in investigative or administrative tasks. Id. (citing Imbler, 424 U.S. at 431 n.33). When determining whether absolute immunity applies to a prosecutor's actions, the Court examines "the nature of the function performed, not the identity of the actor who performed it." Kalina v. Fletcher, 522 U.S. 118, 127 (1997) (quoting Forrester v. White, 484 U.S. 219, 229 (1988)).

At first glance this case appears to involve a prosecutor engaged in an administrative activity, but the weight of precedent shows that creating a Brady/Giglio impeachment disclosure list is a prosecutorial function. A prosecutor is not absolutely immune when, for example, they give legal advice to a police officer in the course of an investigation. See Anderson v. Larsen, 327 F.3d 762, 769 (8th Cir. 2003) (citing Burns v.

---

[3] The emails that LaCoe submitted with her response to the defendants' motion to dismiss, which are inappropriate for the Court to consider at this time, show that Kirchmeier did in fact give LaCoe the opportunity to respond to the allegations against her in at least two instances where he ultimately determined LaCoe was dishonest or made inconsistent statements.

Reed, 500 U.S. 478, 494 (1991)). On the other hand, a prosecutor is entitled to absolute immunity even when they knowingly present false testimony or suppress exculpatory evidence. See Woodworth v. Hulshof, 891 F.3d 1083, 1089 (8th Cir. 2018) (citing Reasonover v. St. Louis Cnty., 447 F.3d 569, 580 (8th Cir. 2006)). Here, Kirchmeier was reviewing the Sisseton Police Department files while deciding whether to pursue a criminal prosecution of a suspect that LaCoe had stopped. During that review, he determined that LaCoe made misrepresentations in her reports that would prevent a successful prosecution. He was obligated by Brady and Giglio to disclose that evidence to the defense in that case and any future case where LaCoe would appear as a witness. If the suppression of material exculpatory evidence is "intimately tied to the judicial process," and warrants absolute immunity, it stands to reason that the disclosure of similar evidence should receive the same treatment. Even if Kirchmeier had improper motives when adding LaCoe to the list as she alleges, Kirchmeier would still retain his immunity. See Sample v. City of Woodbury, 836 F.3d 913, 916 (8th Cir. 2016) ("Because the immunity depends upon the functional nature of the prosecutor's activities, allegations of improper motive in the performance of prosecutorial functions will not defeat its protection."). For that reason, LaCoe's due process violation claim for damages against Kirchmeier in his individual capacity should be dismissed.

Similarly, LaCoe fails to state a claim for damages against Kirchmeier in his official capacity. A claim against a government employee in his or her official capacity is considered a claim against the public employer, whether it be the state or the county. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."); Kelly v. City of Omaha, 813 F.3d 1070, 1075 (8th Cir. 2016) ("A plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer and therefore must establish the municipality's liability for the alleged conduct.") Unless a state has waived its immunity or Congress has abrogated it under Section 5 of the Fourteenth Amendment, the Eleventh Amendment bars actions for

damages against state officials sued in their official capacities. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66, 71 (1989). LaCoe appears to argue that Kirchmeier was acting on behalf of a county or municipality when placing LaCoe on the list and is therefore not entitled to state sovereign immunity. It is true that "the Eleventh Amendment does not apply to counties and similar municipal corporations." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 124 n.34 (1984); see also Northern Ins. Co. of New York v. Chatham County, 547 U.S. 189, 193 (2006) ("[T]his Court has repeatedly refused to extend sovereign immunity to counties."). But a county cannot be held liable under 42 U.S.C. § 1983 "solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). "A county may be liable for a constitutional violation under § 1983 only if the violation resulted from a policy or custom of the municipality." Calgaro v. St. Louis Cnty., 919 F.3d 1054, 1058 (8th Cir. 2019) (quoting Monell, 436 U.S. at 694). LaCoe has failed to allege any unconstitutional policy or custom that enabled Kirchmeier's acts. Therefore, even if Kirchmeier does not have Eleventh Amendment immunity in his official capacity, LaCoe has failed to state a claim for relief.

LaCoe fails to state a claim for damages against Chief Croymans in his individual capacity because she does not allege facts in her complaint sufficient to show that he was personally involved in placing her on the Brady/Giglio list. Establishing "liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, the plaintiff must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) (quoting Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006) (cleaned up)). The only allegation in LaCoe's complaint that connects Croymans to the Brady/Giglio listing states, "Croymans was the main actor in determining that Plaintiff violated Brady/Giglio and made the records for Plaintiff's personnel file and unilaterally added them to Plaintiff's personnel file to insure [sic] that Plaintiff 'would never be a police officer

again.'" As it relates to the Brady/Giglio listing, this is a legal conclusion and insufficient to state a claim for relief. The factual allegations in the complaint relate to Croymans' actions taken as Chief of Police to allegedly force LaCoe to resign. But as already stated, LaCoe does not have a due process property interest in her employment with the Department—she only has a liberty interest in her reputation. The complaint accuses Croymans of asking LaCoe to resign two days after Kirchmeier placed her on the list and subsequently sharing her personnel file with other departments. While sharing details of her tenure with the Department to prevent her from attaining other employment may be an unsavory practice, it does not implicate constitutional protections. Because LaCoe does not allege facts to show that Croymans was responsible for placing her on the Brady/Giglio list, which implicates her liberty interest in her reputation, this claim should be dismissed.

In addition to her claim for damages, LaCoe also seeks injunctive relief requiring the defendants to remove her from the Brady/Giglio list and contact past background inspectors to notify them of the change. Of course, the Eleventh Amendment does not bar suits for prospective injunctive relief against state actors that violate federal law. See Ex parte Young, 209 U.S. 123, 159–60 (1908). LaCoe provides no legal support for the applicability of the Ex parte Young doctrine, and the defendants seemingly ignore that LaCoe requested injunctive relief at all. But the request for injunctive relief, in essence, asks this Court to require a State's Attorney to violate the constitution rather than prevent any ongoing transgression. As already noted, the Brady/Giglio list exists to satisfy the State Attorney's obligation to provide criminal defendants with exculpatory evidence. There is no basis for injunctive relief requiring the opposite. Accordingly, LaCoe has failed to state a claim for injunctive relief against either Kirchmeier or Croymans.

Alderwoman Brittany Appel, Alderman Lee Solberg, Alderman Delray German, Mayor Terry Jaspers, Deputy Trevor Mishler, and Sergeant Jereme Stauss cannot be held personally liable for any of Kirchmeier or Croymans's acts. Like her claim against Croymans, LaCoe does not provide any specific facts alleging that any of these defendants were personally involved in or directly responsible for violating LaCoe's

constitutionally protected interest in her reputation. As such, these personal capacity claims must be dismissed.

LaCoe's official capacity claims against Croymans, Appel, Solberg, German, Jaspers, Mishler, and Stauss are treated as claims against the City of Sisseton that are redundant and should be dismissed. See Kelly, 813 F.3d at 1075. These claims are redundant because LaCoe also brought a claim directly against the City of Sisseton. See Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010) (dismissing a redundant official capacity claim). Thus, LaCoe's claims against Croymans, Appel, Solberg, German, Jaspers, Mishler, and Stauss in their official capacities should be dismissed.

LaCoe's claim against the City of Sisseton should also be dismissed because she fails to allege facts sufficient to support municipal liability. As stated above, a city cannot be held liable under § 1983 on the sole basis of respondeat superior. See Monell, 436 U.S. at 691 (1978). LaCoe has failed to allege that any of the individual defendants were enforcing an unconstitutional policy or custom of the city that resulted in the violation of her federal constitutional rights. Thus, the claim against the City of Sisseton must be dismissed.

**4. Substantive Due Process**

LaCoe also fails to state a claim for a violation of her substantive due process rights. To establish a substantive due process violation, a plaintiff must allege "(1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience." Flowers v. City of Minneapolis, 478 F.3d 869, 873 (8th Cir. 2007) (citations and internal quotation omitted). "For purposes of substantive due process analysis, fundamental rights are those 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" Id. (quoting Terrell v. Larsen, 396 F.3d 975, 978 n.1 (8th Cir. 2005) (en banc)). Here, LaCoe identifies no fundamental right violation or contemporary conscience-shocking conduct. Therefore, this claim should be dismissed.

**B. Constructive Discharge**

LaCoe alleges that she was constructively discharged based on a series of actions taken by the defendants. In response, the defendants argue that constructive discharge is not a standalone federal cause of action and that the claim should be dismissed. The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). LaCoe did not state any federal cause of action in her complaint entitling her to relief. While constructive discharge is sufficient to show an adverse employment action under Title VII, for example, LaCoe did not plead a Title VII discrimination claim. See, e.g., Jones v. City of St. Louis, 825 F.3d 476, 480 (8th Cir. 2016) ("An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to . . . circumstances amounting to a constructive discharge." (quoting Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs., 728 F.3d 800, 804 (8th Cir. 2013)). As the defendants correctly assert, there is no freestanding or independent federal cause of action for constructive discharge. Assuming that all LaCoe's factual allegations are true, she has failed to state a claim for relief.

Even if LaCoe's constructive discharge allegation could be construed as a state law claim, it is still subject to dismissal.. In South Dakota, at-will employment may be terminated with or without cause by notice of either party, but there are certain at-will terminations that are considered contrary to public policy. Constructive discharge may form the basis for a wrongful termination claim under South Dakota Law. See Anderson v. First Century Fed. Credit Union., 738 N.W.2d 40, 46–48 (S.D. 2007). But because LaCoe's federal claims are subject to dismissal and there are no remaining claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over any potential state law wrongful discharge claim. See Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) ("A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has 'dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3)). Therefore, LaCoe's constructive discharge claim should be dismissed.

### C. **Remaining State Law Claims**

LaCoe also alleges a violation of her due process rights under Section VI, Article Two of the South Dakota State Constitution and raises claims for civil conspiracy, intentional infliction of emotional distress, and negligent infliction of emotional distress. Similar to LaCoe's possible state claim for wrongful discharge, the Court also declines to exercise jurisdiction over these claims. There are no remaining federal law claims where the Court has original jurisdiction that would warrant an exercise of supplemental jurisdiction over these state law claims. Accordingly, those claims should be dismissed without prejudice.

## IV. Conclusion

Now, therefore, it is ordered:

1. Defendant's motion for judicial notice, Doc. 10, is granted.
2. Defendant's motion to dismiss, Doc. 7, is granted.
3. Plaintiff's federal law claims are dismissed.
4. Plaintiff's state law claims are dismissed without prejudice.

DATED this 6th day of December, 2022.

BY THE COURT:

Charles B. Kornmann

CHARLES B. KORNMANN
United States District Judge